Craig Davis (SBN 268194)
LAW OFFICES OF CRAIG DAVIS
cdavis@craigdavislaw.com
1714 Stockton Street, Third Floor
Suite 305
San Francisco, CA 94133-2930
Phone:   415.857.5820
Fax:       415.795.4595

Attorney for Plaintiff Jane Roe

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE ROE, | Case No. 3:16-cv-05801-WHO |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| v. | 1.    Cal. Civ. Code § 1786.20(b) |
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., | 2.    Cal. Civ. Code § 1785.14(b) |
| FIRST ADVANTAGE BACKGROUND SERVICES CORP. *as post-merger successor in interest to Verifications, Inc.*, and | 3.    Cal. Civ. Code § 1786.28(b) |
| DOES 1-10, | 4.    Cal. Civ. Code § 1785.18(b) |
| | 5.    Cal. Civ. Code § 1786.18(c) |
| | 6.    Cal. Civ. Code § 1786.10(a) |
| | 7.    Cal. Civ. Code § 1785.10(a) |
| | 8.    Cal. Civ. Code § 1786.24(a) |
| | 9.    Cal. Civ. Code § 1786.24(g) |
| Defendants. | 10.  Cal. Civ. Code § 1785.16(d) |
| | 11.  Cal. Bus. and Prof. Code § 17200 *et seq.* |
| | DEMAND FOR JURY TRIAL |
| | Jury Trial Set:        April 9, 2018 |

Plaintiff Jane Roe, based on information and belief, alleges as follows:

**PARTIES**

1. Plaintiff Jane Roe[1] is an individual and at all relevant times mentioned herein was a resident of Alameda County, California.

2. Plaintiff is informed and believes and on that basis alleges that Defendant First Advantage Background Services Corp. ("First Advantage") is and at all times mentioned herein was a corporation organized and existing under the laws of the State of Florida.

3. Plaintiff is informed and believes and on that basis alleges Verifications, Inc. ("Verifications") was a wholly-owned subsidiary of First Advantage and a corporation organized under the laws of the State of Minnesota until it merged into First Advantage around June 2015. First Advantage assumed all liabilities of Verifications, Inc. in the merger, and is being sued here as "First Advantage Background Services Corp. *as post-merger successor in interest to Verifications, Inc.*"

4. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by these fictitious names. Plaintiff is informed and believes and on that basis alleges that each of these fictitiously-named defendants contributed to and are liable for the injuries to Plaintiff that are alleged in this complaint.

5. Plaintiff is informed and believes and on that basis alleges that, at all times herein mentioned, Defendants DOES 1-10 were agents of each other and of the named Defendant(s) and, in doing the things alleged in this complaint, were acting in the scope of such agency and with the permission and consent of Defendant(s).

**JURISDICTION**

6. Defendants removed this action to this Court on the basis of diversity of citizenship under 28 USC § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

---

[1] Plaintiff is filing anonymously to protect her right to privacy regarding a criminal case that was set aside and vacated pursuant to California Penal Code section 1203.4. *See Doe v. Lincoln Unified Sch. Dist.*, 115 Cal. Rptr. 3d 191, 196-97 (Cal. Ct. App. 2010) (describing the increasing judicial use of fictitious names to protect privacy rights).

## LEGAL BACKGROUND

7. In California, two statutes govern the sale and use of consumer reports: the Consumer Credit Reporting Agencies Act ("CCRAA") (Cal. Civ. Code[2] § 1785.1 et seq.) and the Investigative Consumer Reporting Agencies Act ("ICRAA") (§ 1786 et seq.).

8. The Legislature recognized that consumer reporting agencies play a "vital role" in "meeting the needs of commerce" for information on consumers, and that there is a need to ensure that these consumer reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (§§ 1785.1(b)-(d), 1786(a)-(b), (f).)

9. The purpose of both the CCRAA and the ICRAA is to require consumer reporting agencies to "adopt reasonable procedures" for selling information about consumers "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of such information. (§§ 1785.1(d), 1786(f).)

10. The CCRAA governs "consumer credit reporting agencies," which are defined, in relevant part, as "any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties." (§ 1785.3(d).)

11. The ICRAA governs "investigative consumer reporting agencies," which are defined, in relevant part, as "any person who, for monetary fees or dues, engages in whole or in part in the practice of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties." (§ 1786.2(d).)

12. There is substantial overlap between the CCRAA and the ICRAA. The CCRAA and the ICRAA both govern consumer reports that are to be used for employment purposes (§§ 1785.3(c), 1786.2(b)), and both the CCRAA and the ICRAA regulate the reporting of criminal records information. (§§ 1785.13(a)(6), 1786.18(a)(7).)

---

[2] All further statutory references are to the California Civil Code unless otherwise indicated.

13. A criminal background check report that is to be used for employment purposes is thus both a "consumer credit report" under the CCRAA and an "investigative consumer report" under the ICRAA. (§§ 1785.3(c), 1786.2(b)-(c).)

14. The CCRAA and the ICRAA require consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." (§§ 1785.14(b), 1786.20(b).)

15. When a consumer report is to be used for employment purposes, the CCRAA and the ICRAA require that the consumer reporting agency "shall in addition maintain strict procedures designed to [e]nsure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." (§§ 1785.18(b), 1786.28(b).)

16. The ICRAA also requires that "an investigative consumer reporting agency shall not furnish an investigative consumer report that includes information that is a matter of public record and that relates to an arrest, indictment, [or] conviction . . . unless the agency has verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished." (§ 1786.18(c).)

17. The CCRAA and the ICRAA empower consumers to protect their reputation information by requiring that background check companies allow a consumer to inspect all files about her that are maintained by the company. (§§ 1785.10, 1786.10.) The company must also make a copy of any background check report available to the consumer, upon request, for at least two years after the date that such a report is issued. (§ 1786.11.)

18. If a consumer disputes the accuracy of any information in a criminal background check report, the consumer reporting agency "shall, without charge, reinvestigate and record the current status of the disputed information or delete the item from the file" within 30 days of receiving the dispute. (§ 1786.24(a).)

19. Additionally, the consumer reporting agency must provide a written notice to the consumer that details the results of any reinvestigation. (§§ 1785.16(d), 1786.24(g).)

20. An investigative consumer reporting agency that fails to comply with any

1  requirement of the ICRAA is liable for the greater of $10,000 per violation, or actual damages
2  sustained by the subject of the report, as well as reasonable attorneys' fees and costs of suit for the
3  prevailing plaintiff. (§ 1786.50(a).) If an investigative consumer reporting agency's violations are
4  grossly negligent or willful, it may be liable for punitive damages. (§ 1786.50(b).)

5      21.    Any person who is aggrieved by a violation or threatened violation of the CCRAA
6  and who seeks and obtains injunctive relief to compel compliance with the CCRAA shall be
7  awarded court costs and attorney's fees pursuant to Section 1021.5 of the California Code of Civil
8  Procedure. (§ 1785.31(b), (f).)

## FACTUAL ALLEGATIONS

10      22.    First Advantage and Verifications are "investigative consumer reporting agencies"
11  that sell "investigative consumer reports" containing criminal records information to third parties
12  for employment purposes.[3]

13      23.    First Advantage and Verifications are also "consumer credit reporting agencies"
14  under the CCRAA, and the criminal background check reports that they regularly sell for
15  employment purposes are "consumer credit reports" under the CCRAA. (§ 1785.3(c), (d).) The
16  criminal records information in Defendants' reports are not obtained through personal interviews.

17      24.    First Advantage acquired Verifications on or about November 2013. Upon
18  information and belief, First Advantage and Verifications began integrating their systems for
19  employment background check reports shortly after the acquisition.

20      25.    In August 2014, Plaintiff Jane Roe submitted a job application to an employer.
21      26.    That employer ordered a background check report about Roe from Verifications.
22      27.    The Verifications report improperly stated that Roe had been convicted in 2008.
23      28.    This 2008 case against Roe had been previously dismissed in August 2013 pursuant
24  to California Penal Code § 1203.4, a remedial statute that provides a mechanism to remove "the

---

[3] *See* First Advantage Background Services Corp., *California Legal Compliance*, p. 1, https://www.fadv.com/%5CPortals%5C0%5CDownloads%5CFCRA%5CCALegalComplian ce.pdf (last visited August 8, 2016) (noting that the ICRAA "covers all reports such as criminal searches, employment verifications, education verifications and references").

blemish of a criminal record," and "reward an individual" who has demonstrated rehabilitation by restoring her to her former status in society. *People v. Guillen* 218 Cal.App.4th 975, 998 (2013).

29. At the time the Defendants prepared the criminal background check report on Roe in August 2014, they knew, or should have known, that this 2008 case had been dismissed.

30. The court docket at the San Francisco Superior Court stated that Roe's 2008 case was transferred to Alameda County Superior Court pursuant to California Penal Code § 1203.9, which means that the Alameda County court had accepted "the entire jurisdiction over the case effective the date that the transferring court order[ed] the transfer." Cal. Penal Code § 1203.9(b).

31. In Alameda County Superior Court, the court docket clearly stated that the case had been transferred from San Francisco in 2011, pursuant to Penal Code § 1203.9, and that the Alameda County Superior Court had dismissed the case in 2013, pursuant to Penal Code § 1203.4.

32. All of this information was readily available to Defendants on the face of the readily available court dockets in San Francisco and Alameda counties, yet they failed to report it correctly.

33. The Defendants' report on Roe did not include *any* information about the 1203.9 transfer nor the subsequent 1203.4 dismissal.

34. This report on Roe "illustrates how important it is for . . . a company that traffics in the reputations of ordinary people[ ] to train its employees to understand the legal significance of the documents they rely on." *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008).

35. Neither Verifications nor First Advantage had any procedures in place regarding the reporting of cases that have been transferred pursuant to California Penal Code § 1203.9.

36. Neither Verifications nor First Advantage had any procedures in place regarding the reporting of cases that have been dismissed pursuant to California Penal Code § 1203.4.

37. In fact, neither Verifications nor First Advantage had any state-specific procedures in place to ensure that its court researchers are properly interpreting California court records.

38. On August 21, 2014, the employer rescinded Roe's job offer based on the inaccurate information that had been provided by Defendants in their background check report about Roe.

39. Two days later, Roe's application for another job at that same employer was also rejected.

40. Roe was distressed and mortified that this outdated information had been disclosed to her potential employer. As a direct result of Defendants' unlawful and inaccurate background check report about her, Roe lost job opportunities and suffered injury to her reputation, embarrassment, humiliation, and emotional distress.

41. After her reputation and job prospects at the first location were damaged by the Defendants' report, Roe decided to apply for a job with the same employer at a different location. In this later job application, Roe felt compelled to disclose the 2008 criminal case, but she also disclosed that the 2008 case had been transferred to Alameda County and expunged.

42. The Defendants were aware that Roe had disclosed in her later job application that the 2008 case had been transferred to Alameda County and expunged, yet the Defendants issued *another* report which inaccurately and unlawfully stated that Roe had a conviction from 2008.

43. Roe did not understand why the dismissal in 2013 continued to appear on her report as a conviction from 2008, and she wanted to correct the error because she feared it would happen again when applying to other employers.

44. By October 2014, at the latest, the Verifications website stated that the "Verifications, Inc. business has been combined with First Advantage" and redirected consumers seeking to file a dispute of a Verifications report to the First Advantage webpage for consumers.

45. On January 20, 2015, Roe submitted a Notice of Dispute via certified mail to the address for the First Advantage Consumer Center listed on its webpage for consumers.

46. Roe received a confirmation that her dispute was delivered on January 27, 2015.

47. Neither First Advantage nor Verifications responded to this dispute.

48. On June 9, 2015, Roe emailed First Advantage to both ask for an update on her January 20, 2015 dispute and to submit another dispute of the Defendants' August 2014 report.

49. First Advantage replied that it had no record of the January 20, 2015 dispute and asked Roe for a dispute ticket reference number.

50. On June 15, 2015, Roe emailed that she had never received a dispute ticket reference number from the January 20, 2015 dispute. In an effort to help First Advantage locate her consumer file, she provided the order number listed on the August 2014 report.

51. First Advantage replied that it could not locate a background check report under her name, nor any disputes of such a report.

52. Neither First Advantage nor Verifications investigated Roe's June 9, 2015 dispute.

53. Roe then mailed an additional request for her consumer file to a South Dakota address for the Applicant Services department at Verifications. That mail was redirected to Minnesota and eventually arrived in Illinois in a Zip Code where Verifications has an office.

54. Roe never received a response to this request for her consumer file.

55. During the ensuing months, Roe made several calls to First Advantage to try to track down a copy of her report and a record of her disputes, but First Advantage could not locate them.

56. In November 2015, a First Advantage representative told Roe that Verifications reports are on a different platform that First Advantage representatives cannot access.

57. Roe called several more times in the next two months. The First Advantage representatives said they were looking into it, but were not able to locate her report or her disputes.

58. First Advantage had acquired Verifications two years prior, in November 2013, and the Verifications website had been redirecting consumers to the First Advantage webpage for over a year, since at least October 2014. Yet the First Advantage representatives could not provide Roe any information regarding the August 2014 employment background check report that had been provided to her potential employer, nor investigate her disputes of that report.

59. The Defendants' repeated failures to process Roe's disputes of the Defendants' reports caused Roe to fear that she had lost the benefit of her 1203.4 dismissal. Roe feared that this inaccurate criminal records information would appear on future consumer reports and further damage her reputation when she applied to other jobs. Because of this fear, Roe restricted her job searches and thus limited her potential career opportunities. Defendants' inability to correct the error in Roe's consumer file—or even *locate* her file—caused Roe distress for nearly two years.

60. When First Advantage acquired Verifications Inc. in October 2013, it boasted about

acquiring Verifications' client base[4], to which it could sell new background check reports. However, First Advantage did not give sufficient attention to the consumers (and the consumer files) that were also swept up in that acquisition. First Advantage and Verifications had a duty to treat these consumers fairly and equitably, yet the integration of the Verifications and First Advantage systems was so grossly negligent that Roe's consumer file was lost in limbo for over a year.

61. Later, in June 2016, after Roe had emailed yet again to request her consumer file, First Advantage was finally able to locate her consumer file. After reviewing the file, Roe could see that the inaccurate criminal records information was still there and that First Advantage had never processed any of her several disputes.

62. On June 29, 2016, Roe emailed yet another dispute to First Advantage regarding the unlawful reporting of the 2008 criminal records information.

63. On August 4, 2016, more than 30 days after First Advantage had received Roe's latest dispute, Roe emailed First Advantage asking for an update on her dispute. First Advantage simply replied: "Your dispute has been completed with the case information removed."

64. After purportedly concluding its reinvestigation following Roe's June 2016 dispute, First Advantage did not send Roe a revised version of her report nor provide her a written notice informing her that she could request "a description of the procedure used to determine the accuracy and completeness of the information," as required by Civil Code section 1786.24(g). This notice requirement in section 1786.24(g) is important for consumers like Roe because it often provides information about how the original error occurred, and can give consumers some peace of mind that the error won't reoccur in the future.

65. Over nine months later, Roe discovered that First Advantage had also been negligent in its *reinvestigation* following her dispute. First Advantage had only deleted the 2008 case from Roe's

---

[4] Press Release, First Advantage Background Services Corporation, *First Advantage Acquires Verifications, Inc. Building on Vision to Transform the Industry* (October 30, 2013), http://www.marketwired.com/printer_friendly?id=1846617 ("As a result of the acquisition, First Advantage will add over 4,000 new clients to its over 41,000 current client relationships that process more than 15 million applicants annually.")

reports because it flubbed the search of its own criminal records database during its reinvestigation: First Advantage entered Roe's *residential address* in the "Name" field when searching for her name, which predictably yielded no results. Thus, the Defendants never discovered *why* the initial reports were inaccurate, and they remained unaware that the 2008 San Francisco case had been transferred to Alameda County and subsequently dismissed in 2013.

66. This negligent reinvestigation puts Roe at further risk. First Advantage sells criminal background check reports to many employers in California, including employers to which Roe is interested in applying. If an employer orders a report about Roe in the future, and First Advantage enters her actual name (not her address) in the "Name" search field of its database, there is a risk that the 2008 case will again be included in a criminal background check report about Roe.

## FIRST CAUSE OF ACTION

### (Violations of California Civil Code § 1786.20(b))

### (Against All Defendants)

67. Roe hereby incorporates by reference the preceding paragraphs.

68. Defendants failed to "follow reasonable procedures to assure maximum possible accuracy of the information" about Roe, in violation of Civil Code section 1786.20(b).

69. Defendants repeatedly failed to accurately report the criminal records information that was readily available on the court dockets in San Francisco and Alameda counties.

70. Defendants' violations were willful and/or grossly negligent.

71. Defendants' violations entitle Roe to damages including, but not limited to, the actual harms suffered by Roe as a direct legal, proximate, and foreseeable result of Defendants' violations, or statutory damages of $10,000, and punitive damages. (§ 1786.50(a)-(b).)

## SECOND CAUSE OF ACTION

### (Violations of California Civil Code § 1785.14(b))

### (Against All Defendants)

72. Roe hereby incorporates by reference the preceding paragraphs.

73. Defendants fail to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," in violation

of Civil Code § 1785.14(b).

74. Roe has been aggrieved by Defendants' violations of this requirement, and Roe and other California job applicants are aggrieved by Defendants' threatened violations of this requirement when preparing any future consumer reports on them.

75. Roe is entitled to seek injunctive relief to compel Defendants' compliance with this requirement in the CCRAA. (§ 1785.31(b), (d).)

## THIRD CAUSE OF ACTION

## (Violations of California Civil Code § 1786.28(b))

## (Against All Defendants)

76. Roe hereby incorporates by reference the preceding paragraphs.

77. "A consumer reporting agency which furnishes a consumer report for employment purposes . . . shall in addition maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." Civ. Code § 1786.28(b).

78. Defendants failed to recognize that Roe's 2008 criminal case had been transferred to Alameda County, and do not have any procedures in place to ensure that its court researchers will search the transferee county following a transfer of a case pursuant to Penal Code § 1203.9.

79. Defendants also do not have procedures in place to recognize when a case has been dismissed pursuant to Penal Code § 1203.4.

80. Defendants' violations were willful and/or grossly negligent.

81. Defendants' violations entitle Roe to damages including, but not limited to, the actual harms suffered by Roe as a direct legal, proximate, and foreseeable result of Defendants' violations, or statutory damages of $10,000, and punitive damages. (§ 1786.50(a)-(b).)

## FOURTH CAUSE OF ACTION

## (Violations of California Civil Code § 1785.18(b))

## (Against All Defendants)

82. Roe hereby incorporates by reference the preceding paragraphs.

83. "A consumer credit reporting agency which furnishes a consumer credit report for

1   employment purposes . . . shall, in addition, maintain strict procedures designed to ensure that
2   whenever public record information which is likely to have an adverse effect on a consumer's ability
3   to obtain employment is reported it is complete and up to date." Civ. Code § 1785.18(b).

4   84.   Defendants failed to recognize that Roe's 2008 criminal case had been transferred to Alameda County, and do not have any procedures in place to ensure that its court researchers will search the transferee county following a transfer of a case pursuant to Penal Code § 1203.9.

7   85.   Defendants also do not have procedures in place to recognize when a case has been dismissed pursuant to Penal Code § 1203.4.

9   86.   Roe has been aggrieved by Defendants' violations of this requirement, and Roe and other California job applicants are aggrieved by Defendants' threatened violations of this requirement when preparing any future consumer reports on them.

12  87.   Roe is entitled to seek injunctive relief to compel Defendants' compliance with this requirement in the CCRAA. (§ 1785.31(b), (d).)

**FIFTH CAUSE OF ACTION**

**(Violations of California Civil Code § 1786.18(c))**

**(Against All Defendants)**

17  88.   Roe hereby incorporates by reference the preceding paragraphs.

18  89.   Defendants failed to verify the accuracy of the criminal records information about Roe during the 30-day period ending on the date on which each report was furnished, in violation of Civil Code section 1786.18(c).

21  90.   Defendants' violations were willful and/or grossly negligent.

22  91.   Defendants' violations entitle Roe to damages including, but not limited to, the actual harms suffered by Roe as a direct legal, proximate, and foreseeable result of Defendants' violations, or statutory damages of $10,000, and punitive damages. (§ 1786.50(a)-(b).)

**SIXTH CAUSE OF ACTION**

**(Violations of California Civil Code § 1786.10(a))**

**(Against All Defendants)**

28  92.   Roe hereby incorporates by reference the preceding paragraphs.

93. "Every investigative consumer reporting agency shall, upon request and proper identification of any consumer, allow the consumer to visually inspect all files maintained regarding the consumer at the time of the request." Cal. Civ. Code § 1786.10(a)

94. Roe requested a copy of her consumer file on multiple occasions over the course of many months, and the Defendants failed to provide her a copy or allow her to inspect the file. In fact, the Defendants could not even find Roe's consumer file.

95. Defendants' violations were willful and/or grossly negligent.

96. Defendants' violations entitle Roe to damages including, but not limited to, the actual harms suffered by Roe as a direct legal, proximate, and foreseeable result of Defendants' violations, or statutory damages of $10,000, and punitive damages. (§ 1786.50(a)-(b).)

## SEVENTH CAUSE OF ACTION

### (Violations of California Civil Code § 1785.10(a))

### (Against All Defendants)

97. Roe hereby incorporates by reference the preceding paragraphs.

98. "Every consumer credit reporting agency shall, upon request and proper identification of any consumer, allow the consumer to visually inspect all files maintained regarding that consumer at the time of the request." Cal. Civ. Code § 1785.10(a).

99. Roe requested a copy of her consumer file on multiple occasions over the course of many months, and the Defendants failed to provide her a copy or allow her to inspect the file. In fact, the Defendants could not even find Roe's consumer file.

100. Roe has been aggrieved by Defendants' violations of this requirement, and Roe and other Californians are aggrieved by Defendants' threatened violations of this requirement because Verifications and First Advantage have mishandled the consolidation of their systems following the acquisition of Verifications such that some consumers do not have access to their consumer files upon request.

101. Roe is entitled to seek injunctive relief to compel Defendants' compliance with this requirement in the CCRAA. (§ 1785.31(b), (d).)

## EIGHTH CAUSE OF ACTION

**(Violations of California Civil Code § 1786.24(a))**

**(Against All Defendants)**

102. Roe hereby incorporates by reference the preceding paragraphs.

103. The ICRAA requires First Advantage to reinvestigate any disputed information within 30 days of receiving a dispute from a consumer. Cal. Civ. Code § 1786.24(a).

104. On at least four separate occasions—following Roe's disputes in January, June, September, and November of 2015—the Defendants failed to reinvestigate the disputed information. The Defendants neither recorded the status of the disputed information nor deleted the disputed criminal records information from Roe's file within 30 days of receiving disputes from Roe.

105. Defendants' violations were willful and/or grossly negligent.

106. Defendants' violations entitle Roe to damages including, but not limited to, the actual harms suffered by Roe as a direct legal, proximate, and foreseeable result of Defendants' violations, or statutory damages of $10,000, and punitive damages. (§ 1786.50(a)-(b).)

## NINTH CAUSE OF ACTION

**(Violations of California Civil Code § 1786.24(g))**

**(Against All Defendants)**

107. Roe hereby incorporates by reference the preceding paragraphs.

108. "An investigative consumer reporting agency shall provide notice to the consumer of the results of any reinvestigation under this section by mail or, if authorized by the consumer for that purpose, by other means available to the agency. The notice shall include . . . a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the investigative consumer reporting agency, including the name, business address, and telephone number of any furnisher of information contacted in connection with that information. . ." Civ. Code § 1786.24(g).

109. Defendants never provided this notice, in violation of Civil Code section 1786.24(g).

110. Defendants' violations were willful and/or grossly negligent.

111. Defendants' violations entitle Roe to damages including, but not limited to, the

actual harms suffered by Roe as a direct legal, proximate, and foreseeable result of Defendants' violations, or statutory damages of $10,000, and punitive damages. (§ 1786.50(a)-(b).)

## TENTH CAUSE OF ACTION

**(Violations of California Civil Code § 1785.16(d))**

**(Against All Defendants)**

112. Roe hereby incorporates by reference the preceding paragraphs.

113. "A consumer credit reporting agency shall provide written notice to the consumer of the results of any reinvestigation under this subdivision, within five days of completion of the reinvestigation. The notice shall include . . . "a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the consumer credit reporting agency, including the name, business address, and telephone number of any furnisher of information contacted in connection with that information. . ." Civ. Code § 1785.16(d).

114. Defendants never provided this notice, in violation of Civil Code section 1785.16(d).

115. Roe has been aggrieved by Defendants' violations of this requirement, and Roe and other California job applicants are aggrieved by Defendants' threatened violations of this requirement when preparing any future consumer reports on them.

116. Roe is entitled to seek injunctive relief to compel Defendants' compliance with this requirement in the CCRAA. (§ 1785.31(b), (d).)

## ELEVENTH CAUSE OF ACTION

**(Violations of Business and Professions Code § 17200 *et seq*.)**

**(Against All Defendants)**

117. Roe hereby incorporates by reference the preceding paragraphs.

118. The Unfair Competition Law ("UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200 *et seq.*

119. Defendants engaged in unlawful and unfair business practices under the UCL by violating multiple sections of the ICRAA and the CCRAA.

120. Roe was injured in fact and lost money or property as a result of these unlawful and

unfair business practices. Roe incurred costs—including mailing costs, transportation costs, and fees for the retrieval and copying of court records—while attempting to correct the errors in Defendants' inaccurate and unlawful consumer reports.

121. Roe is entitled to seek injunctive relief to prevent Defendants' use of any practice which constitutes unfair competition. Cal. Bus. & Prof. Code § 17203.

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1. For statutory damages of $10,000 per violation of the ICRAA, or damages to be proven at trial, whichever is greater;
2. For punitive damages;
3. For injunctive relief;
4. For costs of suit herein incurred;
5. For reasonable attorney's fees;
6. For interest as allowed by law; and
7. For such other and further relief as the Court may deem proper.

Dated: July 12, 2017                    */s/ Craig Davis*

                                        Craig Davis
                                        LAW OFFICES OF CRAIG DAVIS
                                        Attorney for Plaintiff Jane Roe

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests a trial by jury on all issues so triable. The Court has set a jury trial for April 9, 2018. (ECF Dkt. 24).

Dated: July 12, 2017                    */s/ Craig Davis*

                                        Craig Davis
                                        LAW OFFICES OF CRAIG DAVIS
                                        Attorney for Plaintiff Jane Roe